UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JESUS ZAMBRANO, <br><br> Plaintiff, <br> v. <br><br> CITY OF JOLIET and PATRICK SCHUMACHER <br><br> Defendants. | Case No. 21-cv-4496 <br><br> Honorable Steven Seeger |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION SUMMARY JUDGMENT**

Defendants, CITY OF JOLIET, a municipal corporation (hereafter the "City"), and PATRICK SCHUMACHER ("Defendant Schumacher") by and through their attorneys, TRESSLER, LLP, submit the following Reply in support of their Motion for Summary Judgment as follows:

**Introduction**

Preliminarily, Plaintiff's response to Defendants' statement of material facts does not dispute certain numbered material facts listed in Defendants' Motion. ECF No. 87, pp. 1-22. Those facts not specifically disputed should be deemed admitted. *See* Local Rule 56.1(a)(3). Additionally, Plaintiff disputes the following paragraphs listed in Defendants' statement of facts, 10, 11, 23, 24, 25, 26, which discuss Defendant Schumacher and Plaintiff's conversation on May 22, 2009. ECF No. 87, pp. 3-7. Plaintiff argues that Exhibit J – Dan Walsh's Deposition Transcript – supports Plaintiff's dispute of these material facts. Plaintiff's argument is unavailing because Dan Walsh had no personal knowledge of Defendant Schumacher and Plaintiff's conversation on May 22, 2009 because he was not there. Thus, the Court should disregard Plaintiff's disputes as referenced in Paragraphs 10, 11, 23, 24, 25, 26. *See* Local Rule 56.1(d)(1) and (2).

Notwithstanding the above, Plaintiff's response spends much of his time arguing that Defendant Schumacher's and ASA Walsh's affidavits contradict their deposition testimony. First, Plaintiff states that Defendant Schumacher's deposition testimony contradicts his affidavit because in his affidavit he stated that he did not have his police report on the witness stand and that his report was not used to refresh his recollection. *See* ECF No. 86, pp. 9. Plaintiff argues that during his deposition, he stated that "he had no memory of whether the report was even available to him at trial or whether he met with a State's Attorney prior to taking the stand." *Id.* This argument fails because Defendant Schumacher never testified nor was he asked the very relevant question as to whether *he* had the police report with him on the witness stand or if it was used to refresh his recollection. Instead, opposing counsel only asked the following question, which does not contradict his affidavit:

> Q.· · Okay.· Do you have any independent
> 19· recollection of whichever State's Attorney was
> 20· examining you looking at documents or having
> 21· documents available to them while they were
> 22· questioning you?
> 23· · · · A.· · No.

Ex. I, 17: 18-23. Additionally, Defendants produced both criminal transcripts in which Defendant Schumacher testified, and these transcripts 100% confirm that Defendant Schumacher's police report was not used to refresh his recollection, nor was it used as evidence during Plaintiff's first criminal trial. *See* SOF ¶¶ 50, 72. Here, Plaintiff's counsel failed to ask relevant questions regarding whether Defendant Schumacher had his police report or was used to refresh his recollection, and the transcript speaks for itself. Therefore, his argument that Defendant Schumacher's testimony contradicts his affidavit is without merit and should be rejected.

Similarly, Plaintiff next argues that ASA Walsh's affidavit contradicts his deposition testimony. During ASA Walsh's testimony, he did testify that it is his practice to look at police

reports and prepare his witnesses for criminal trials. Plaintiff argues that this testimony now contradicts ASA Walsh's affidavit because Walsh stated in his affidavit that he did not conduct the direct examination of Defendant Schumacher and did not prepare him for his trial testimony. *See* Ex. D, ¶ 8. ASA Walsh's affidavit is true because he did not conduct the direct examination of Defendant Schumacher or prepare him to testify, rather another prosecutor, ASA McKenna did. *See* SOF ¶ 48; Ex. E, pgs. 222-239. In fact, Plaintiff's counsel never specifically asked ASA Walsh whether he prepared Defendant Schumacher for his direct examination at trial or whether he would prepare a witness that was not part of his direct examination, like Defendant Schumacher. *See* Ex. J. Instead, Plaintiff's counsel wrongly assumed that ASA Walsh conducted the direct examination of Defendant Schumacher, and therefore, never took the deposition of ASA McKenna who conducted Defendant Schumacher's direct examination at trial. This fatal flaw requires Plaintiff to now make a speculative argument that there is a "strong likelihood" that Walsh participated with his partner – ASA McKenna – in preparing Defendant Schumacher's testimony. However, there is no evidence to support Plaintiff's speculative argument, and therefore, Plaintiff cannot use this unsupported assertion to oppose Defendants' motion for summary judgment. *See Liu v. T & H Machine, Inc.*, 191 F.3d 790, 796 (7th Cir.1999) (a party must present more than mere speculation or conjecture to defeat a summary judgment motion).

### A. *Plaintiff Fails to Create an Issue of Fact That Defendant Schumacher Deliberately Falsified Evidence in Bad Faith.*

Plaintiff's response provides no case law or facts to support any inference that at the time Defendant Schumacher authored his police report, that he deliberately falsified evidence. Instead, Plaintiff attacks Defendant Schumacher's evidence because it allegedly is "rank speculation, unsupported by anything in the record." ECF #86, pp. 7. Plaintiff's argument fails because he admitted to this evidence in his response to Defendants' statement of facts.

3

Here, the uncontroverted evidence proves that Defendant Schumacher spoke with Zambrano on May 22, 2009 at 2:25 p.m. in which he told Defendant Schumacher, "I told him I was with my girl and a couple friends the night before, and that was it." Ex. A, 113: 8-9." Importantly, it is undisputed that Michael Ortiz and Pedro Sanchez were at Zambrano's residence when Defendant Schumacher spoke with Zambrano. ECF #87, ¶ 9. Two hours later, Defendant Schumacher spoke with Claudia Sanchez and Latoya Ortiz who both confirmed that Plaintiff was with Michael Ortiz and Pedro Sanchez at their residence at the time in question. ECF #87, ¶¶ 15-16. Even more, Claudia Sanchez and Latoya Ortiz positively identified Jesus Zambrano, Michael Ortiz and Pedro Sanchez as the individuals who were at their residence at the time in question through a photo lineup. *Id.* The next morning, Defendant Schumacher interviewed Christian Lopez – the prosecution's star witness – who also confirmed he was with Michael Ortiz and Pedro Sanchez at Claudia Sanchez's residence. ECF #87, ¶ 17. All three of these witnesses corroborated the same relevant facts, i.e., that Plaintiff was with Michael Ortiz and Pedro Sanchez at Claudia Sanchez's house in the evening hours of May 21, 2009.

Following Defendant Schumacher's communications with these three witnesses, Defendant Schumacher then authored his police report on May 23, 2009 at 2:25 a.m. ECF #87, ¶ 37. Based on Defendant Schumacher's investigation and Zambrano's statement "I told him I was with my girl and a couple friends the night before", Defendant Schumacher authored the following police report:

> On 05/22/09 at approximately 1500 hrs I had the following conversation with Jesus Zambrano **in essence and not verbatim**.
>
> I advised Zambrano that he was not in custody and he was free to leave at any time at that point. I asked him if he would have a seat in the back of Sgt. Reid's unmarked squad car and he agreed to speak with me. At about that time, I reiterated to him again that he was not under arrest. Zambrano asked me why we wanted to speak with him and I advised him that his name had come up in an investigation and I

4

asked him where he was last night. **Zambrano stated to me that he was with his friends, PEDRO and MICHAEL**. (It should be noted Pedro Sanchez and Michael Ortiz were present at the Zambrano's residence when we made contact with Zambrano and his mother). **Zambrano stated to me that he, Pedro, and Michael had gone to a girl's house by the name of CLAUDIA who lived somewhere in the area of Ruby St. near the Westside of the Desplaines River**. Zambrano stated that he had several icehouse beers and had smoked some marijuana while at Claudia's house however he was not intoxicated. He stated that he and his friends had gone to Claudia's house and that they then returned to his house at 1025 N. Raynor. At about this time Sgt. Reid and I did bring Zambrano, voluntarily, to JPD in order to conduct a more in depth interview. Zambrano agreed to come to JPD and speak with us. Again, Zambrano was advised that he was not under arrest and that he was free to leave at any time at that point.

**Ex. B.**

Plaintiff admitted to all the above facts and therefore, these facts are not speculative. Plaintiff may deny telling Defendant Schumacher exactly the names of his "girl" or "couple friends" but that does not establish Defendant Schumacher acted in bad faith when he wrote his police report. Instead, it is perfectly reasonable that based on Defendant Schumacher's investigation, he reasoned that Plaintiff's "girl" was Claudia Sanchez and his "couple friends" were Michael Ortiz and Pedro Sanchez. Plaintiff presents no evidence, even circumstantial evidence, that at the time Defendant Schumacher wrote his police report, he did not reasonably believe that Plaintiff was with Michael Ortiz and Pedro Sanchez at Claudia Sanchez's house in the evening hours of May 21, 2009, which was true. Therefore, it cannot be said that this is a "He Said/He Said" situation as Plaintiff alleges because there is no evidence that information was false or made in bad faith.

**B.** ***Defendant Schumacher's Police Report Was Not Used Against Plaintiff at Trial Nor Was it Used "To Get the Ball Rolling" Toward Prosecution***

Plaintiff offers no material evidence to establish that Defendant Schumacher's alleged fabricated police report was used against him at either trial. Defendants argue *Brown v. City of Chicago*, No. 2022 WL 4602714, at *23 (N.D. Ill. 2022) supports their position that the alleged

5

fabricated evidence must be used against Plaintiff at trial, which Plaintiff fails to rebut. First, Defendant Schumacher testified that he did not have his police report nor was it used to refresh his recollection during Zambrano's first criminal trial relative to Plaintiff's fabrication of evidence claim. Ex. C, ¶ 35. Plaintiff does not dispute this fact, nor can he because the complete criminal trial transcript confirms this fact. *See* Ex. E. Second, Defendant Schumacher testified that he did not have his police report nor was it used to refresh his recollection during Zambrano's second criminal trial relative to Plaintiff's fabrication of evidence claim. Ex. C, ¶ 38. Plaintiff takes issue with his second trial testimony because Defendant Schumacher did review his police report "over the weekend" to confirm whether Michael Ortiz was under arrest on May 22, 2009. ECF # 86, pg. 8. However, this argument is a red herring because Defendant Schumacher's review of his police report relative to whether Michale Oritz was under arrest has nothing to do with Plaintiff's fabrication of evidence claim.

During Plaintiff's second criminal trial, Defendant Schumacher originally testified that Michael Ortiz was not placed under arrest when he spoke to him during his investigation. Ex. F, pg. 145. Following this testimony, Plaintiff's counsel Patel called Defendant Schumacher in his case in chief to establish if Michael Ortiz was in fact under arrest when he spoke to him. *Id.* Defendant Schumacher testified that over the weekend, he reviewed his report which helped refresh his recollection that Mr. Ortiz was under arrest during their conversation. Ex. F, pgs. 394-397. Counsel Patel did not ask Defendant Schumacher any questions related to his conversation with Plaintiff on May 22, 2009, as his testimony was only used to clarify whether Michale Ortiz was under arrest. *Id.* Therefore, while Defendant Schumacher did use his police report to refresh his recollection over the weekend of the second trial, this testimony is not relevant to Plaintiff's fabrication of evidence claim. Specifically, the alleged false statements in the police report –

6

Defendant Schumacher's conversation with Plaintiff on May 22, 2009 – were never used against Plaintiff during his second criminal trial, and Plaintiff provides no evidence to the contrary.

Guided by the above, *Brown v. City of Chicago*, 2022 WL 4602714, at *23 (N.D. Ill. 2022) is directly on point because Defendant Schumacher's police report was not introduced at Plaintiff's trials and was not used to refresh his recollection about his conversation with Plaintiff on May 22, 2009. SOF, ¶ 52. Plaintiff argues that this Court cannot accept *Brown* as precedent because it "would undercut nearly all fabrication of evidence claims." ECF #86, pgs. 10-11. Here, your Honor gave Plaintiff the opportunity to present evidence that Schumacher's police report "got the ball rolling" towards prosecution but Plaintiff failed to deliver that evidence. ECF #38. Instead, Plaintiff relies on ASA Walsh's speculative testimony regarding what happened to Defendant Schumacher's police report and whether ASA Walsh used this police report to prepare Defendant Schumacher for trial. *Id.* First, there is no evidence that ASA Walsh was involved in charging Plaintiff with murder or in his indictment. *See* Ex. J. Instead, the evidence establishes that Detective Schott obtained Plaintiff's arrest warrant who Plaintiff did not depose. Ex C, ¶ 23. Due to Plaintiff's failure, he has no evidence to establish that Defendant Schumacher's police report was used to obtain Plaintiff's arrest warrant. SOF, ¶ 21. Moreover, Plaintiff has no evidence to establish that Defendant Schumacher's police report gave prosecutors probable cause to obtain Plaintiff's arrest warrant for murder. Finally, as argued *supra,* ASA Walsh did not prepare Defendant Schumacher for his trial testimony because he was not his witness. Ex. D, ¶ 8. Instead, ASA McKenna conducted Schumacher's direct examination because of his involvement with the GSR test, who again, Plaintiff did not depose. Ex C, ¶ 33.

It is Plaintiff's burden to present evidence establishing a causal or nexus link between Defendant Schumacher's police report and Plaintiff's jury verdict, which he failed to do. Instead,

Defendants offer uncontroverted evidence that Defendant Schumacher's police report did not "get the ball rolling" towards prosecution. First, Schumacher's alleged false police report was not admitted or used in any way during either criminal trial. SOF, ¶ 52. Second, Defendant Schumacher's alleged false police report did not even provide the Will County State's Attorney's Office with probable cause to obtain Jesus Zambrano's arrest warrant for the murder of Robert Gooch because his police report fails to put Zambrano at the scene of the murder. SOF, ¶ 30. Finally, Defendant Schumacher did not even testify during Zambrano's grand jury proceedings. SOF, ¶ 29. Plaintiff has no admissible evidence that Defendant Schumacher's police report was used: (1) to obtain Plaintiff's arrest warrant; (2) during the grand jury proceedings; and (3) during either criminal trial. As such, his speculative arguments are not sufficient to establish a genuine issue of material fact. *See Liu v. T & H Machine, Inc.*, 191 F.3d 790, 796 (7th Cir.1999) (a party must present more than mere speculation or conjecture to defeat a summary judgment motion).

    C.    ***Defendant Schumacher's Police Report Did Not Have a Material Impact on His Guilty Verdict***

Plaintiff argues Defendant Schumacher's testimony at trial had a material impact on his guilty verdict because: (1) his testimony constitutes an inculpatory statement because it placed Plaintiff in close temporal proximity to Pedro Sanchez; (2) his testimony was relevant to the accomplice accountability; (3) Defendants cannot rely on the McDonald's or Larkin Apartments surveillance videos; (4) Trooper Lantz's testimony that Zambrano flight to Mexico "was weak"; and (5) ASA Walsh and McKenna used Schumacher's testimony during their closing and rebuttal arguments. ECF #86, pgs. 11-14. Each will be discussed in turn.

Plaintiff argues that *Harris v. Thompson*, 698 F.3d 609 (7th Cir. 2012) supports his position that Defendant Schumacher's testimony was "powerful" evidence of Plaintiff's guilt. *Harris* is distinguishable. There, plaintiff was convicted of murder for strangling her 4-year-old son. *Id* at

8

12. Plaintiff appealed this conviction because she was not allowed to present exculpatory testimony from the only eyewitness to the alleged murder - her 6-year-old son. *Id.* According to plaintiff, her son would have testified that he was in the room when he saw his brother accidentally strangle himself, and importantly, plaintiff was not in the room. *Id.* at 628. The Illinois Appellate Court held that the son's testimony "was not likely to have had any significant impact upon the strength of the State's case" because other witnesses testified that the daughter had done this act before. *Id.* at 629. The Seventh Circuit found this analysis to lack merit, finding that the son's testimony "had a reasonable probability of affecting the outcome of trial" because there were no eyewitnesses who testified. *Id.*

Unlike *Harris,* Defendant Schumacher was not an eyewitness to the murder, and in fact, did not even place Plaintiff at the scene of the murder. SOF ¶ 30. Plaintiff's own counsel cross-examined Defendant Schumacher on this very fact,

> Q. And when you went to Jesus's house and spoke to him about the evening of May 21st of 2009, when he told you that they were over by this girl's house, he voluntarily spoke with you at that point?
> A. Yes, he did.
> Q. And you didn't specifically ask him anything about the early morning hours of May 22nd being at Lois Place, did you, at that time?
> A. Not that I recall.

Ex. E, pgs. 238-239. In this regard, *Harris* actually supports Defendants position in that the Seventh Circuit placed a profound weight on eyewitness testimony, which is why Plaintiff received a guilty verdict in the first place. Here, Christian Lopez, was the only eyewitness who testified in this case and his testimony supported the State's position that Plaintiff murdered Robert Gooch. *See* Defendants' MSJ Memorandum, pgs. 12-13.

Plaintiff's reliance on *United States v. Fleming*, 594 F.2d 598 (7th Cir. 1979) is similarly misplaced. There, the court held where "inculpatory statements are admitted in evidence, additional corroborating evidence may make the error harmless beyond a reasonable doubt.") *Id.*

9

at 603. Thus, even if Defendant's Schumacher's testimony was an inculpatory statement, which Defendants deny is possible, the additional corroborating evidence at trial establishes that Defendant Schumacher's testimony had no material impact on the jury's verdict. Here, Detective Schott testified that Plaintiff was with Michale Ortiz and Pedro Sanchez at Claudia Sanchez' house and then went to Larkin Apartments (where the murder took place). SOF, ¶ 58. Christian Lopez also testified that he was with Plaintiff, Michael Ortiz and Pedro Sanchez at Claudia Sanchez's house. SOF, ¶ 18. That's three people that testified to the same thing, yet according to Plaintiff, Detective Schumacher's testimony is somehow the only relevant one. However, Plaintiff's whereabouts hours before the murder was not material to Plaintiff's guilty verdict; rather, the totality of the physical evidence putting Plaintiff at the scene of the murder, along with eyewitness testimony and his subsequent actions of fleeing to Mexico served as the material evidence which led to his conviction.

Next, Plaintiff argues that Detective Schumacher's testimony that he was in the company of Sanchez for "an extended period of time was exceptionally probative on the issue of whether Zambrano was accountable for Sanchez." ECF #86, pg. 12. Plaintiff cites to *People v. Jones*, 2015 IL App (1st) 142597, ¶ 22 to support his assertion that Detective Schumacher's testimony was probative of accountability. *Id.* Yet, *People v. Jones,* is of no help to the Plaintiff as it explicitly states, "the jury may consider the defendant's presence during the commission of the crime, continued close association with other offenders after the commission, the defendant's failure to report the crime, and the defendant's flight from the scene." *Id.* Here, Defendant Schumacher's police report never even addressed Plaintiff's presence *during* the commission of the crime. Ex. B. The only witness that provided this testimony was Christian Lopez. Ex. E, pgs. 275-347. Thus,

10

even taking Plaintiff's citation as accurate, Defendant Schumacher's testimony was not material on accountability.

Plaintiff also argues that this Court cannot consider the surveillance videos of the McDonald's and Larkin Apartments because it constitutes inappropriate opinion testimony. ECF #86, pg. 12. According to Plaintiff, Defendants solely rely on Walsh's affidavit to support their conclusion that these videos placed Plaintiff closer in time to the actual murder than Defendant Schumacher's testimony ever did. *Id.* Plaintiff's argument fails because he omits the fact that Defendants produced the entire first trial criminal transcript as Exhibit E. In that transcript, Christian Lopez positively identified Jesus Zambrano as the driver of the car in the McDonald's video. Ex. E, pg. 285-286. Additionally, during ASA McKenna's closing argument, she used a video still of the McDonald's video to show the jury that it depicted Zambrano as the driver of the gray cutlass. Ex. E, pg. 471-472. She further stated: "And we put in the McDonald's tape to show you that, to corroborate Christian Lopez is telling the truth, you can see the defendant (Plaintiff) on that video, his face, in the drive thru window as the driver getting the food from McDonald's. That video…is in evidence." *Id.* ASA Walsh also stated on rebuttal, "Finally May 28, 2009, our videotape evidence shows Mr. Zambrano with his head shaved. Notice in the McDonald's video he had a full head of hair on May 22. He had his head shaved." Ex. E, pg. 528. Additionally, ASA Walsh called Joliet Police Department's Computer Forensic Examiner, Christopher Botzum who testified using scientific analysis that the gray cutlass in the McDonald's surveillance video was the same gray cutlass in the Larkin Apartment surveillance video. SOF ¶ 59. Finally, the jury specifically requested the McDonald's video still during jury deliberations to confirm it depicted Zambrano. Ex. E, pg. 550-559.

There is no question that the McDonald's video admitted into evidence at trial, clearly depicted Zambrano driving the gray cutlass which placed him 15-minutes from the time of the murder. The forensic expert then linked that gray cutlass in the McDonald's video to the gray cutlass in the Larkin apartments as the same vehicle. SOF ¶ 59. This is admissible evidence that the jury used to convict Zambrano.

Fourth, Plaintiff argues that the evidence regarding Plaintiff's flight to Mexico was "weak" because his mother came to his rescue and testified that she forced him to flee to Mexico, shave his head and give a false name. ECF #86, pg. 13. According to Plaintiff, the prosecution should not have been allowed to argue Plaintiff's flight to Mexico. *Id.* Plaintiff provides no case law to support this assertion, in fact, Plaintiff's own case law cited in his response brief is detrimental to this "argument." *See People v. Jones*, 2015 IL App (1st) 142597, ¶ 22 ("the jury may consider… defendant's flight from the scene"). The entire theme of the prosecutions case revolved on Plaintiff's flight because guilty people, like Plaintiff, flee, alter their appearance and identity. Ex. D, ¶ 20. Here, after being aware of his arrest warrant, Plaintiff shaved his head, fled to Mexico, and even when he was caught, lied to Trooper Lantz when he stated his name was "Juan." SOF ¶ 34. If that evidence was not material to Plaintiff's guilty jury verdict, as his counsel claims, it belies belief that Defendant Schumacher's testimony - as to Plaintiff's whereabouts hours before the murder - was.

Finally, Plaintiff argues that the ASA's closing arguments referred to Defendant Schumacher's testimony, and therefore, is a strong indication that it was probative of Plaintiff's guilty verdict. During ASA McKenna's closing statement, she elicited that when Detective Schumacher went to Zambrano's residence on May 22, 2009, Pedro Sanchez was there, which is not at issue in Plaintiff's fabrication of evidence claim. Ex. E, pg. 476. When ASA McKenna

12

attempted to get into Defendant Schumacher's conversation with Zambrano, the Judge sustained the objection and therefore, was not argued in closing. *Id.* Additionally, during ASA Walsh's rebuttal argument, he never even identified Defendant Schumacher and did not disclose any of the substance of his conversation with Zambrano and again, the Judge sustained defense counsel's objection. *See GC2 Inc. v. Int'l Game Tech., IGT, Doubledown Interactive LLC,* 391 F. Supp. 3d 828, 848 (N.D. Ill. 2019) (misstatement during closing arguments did not impact jury's verdict). Interestingly, Plaintiff's counsel Bretz, used Defendant Schumacher's testimony to support his case in chief because Defendant Schumacher never asked Plaintiff the relevant question as to his whereabouts during the time of the murder. Ex. E, pg. 502. This is further evidence that Defendant Schumacher's testimony was not material to the jury's guilty verdict.

In sum, Plaintiff has not offered any evidence to establish that Defendant Schumacher's alleged false police report had a material impact on his guilty verdict. Instead, Plaintiff was convicted based on the following material evidence, which Plaintiff admits:

- People's Exhibit 1 – Photograph of Apartment 309
- People's Exhibit 3 – Surveillance video of Larkin Apartments
- People's Exhibit 4 – Surveillance video of McDonalds
- People's Exhibit 14 – Trooper Lantz's Traffic Stop
- Defense Exhibit 3 - Surveillance video of Larkin Apartments
- Defense Exhibit 4 – Photo of Pedro Sanchez

ECF #87, pgs. 11-12. Additionally, according to ASA Walsh, the following additional evidence was critical in obtaining Plaintiff's guilty verdict.

- Surveillance video of McDonalds because it depicted Plaintiff as the driver of the gray cutlass at approximately 12:40 a.m., which was fifteen minutes before the murder

- Surveillance video of Larkin Apartments depicted the same grey cutlass, as confirmed by forensic expert Christopher Botzum, arriving and leaving the scene of the murder during the relevant time period. Additionally, this video depicts the driver of the cutlass (Plaintiff) take what appeared to be a gun out of the hood, go into the Larkin Apartments and is seen running from the murder scene.

13

- Testimony from Christopher Lopez who was an eyewitness to the murder

- Testimony from Trooper Lantz who testified that he arrested Plaintiff 29 miles from the Mexico border. Trooper Lantz testified that Zambrano altered his appearance by shaving his head, did not have any identification on him, and lied to Trooper Lantz when Plaintiff said his name was "Juan."

Ex. D, ¶¶ 13-21. Given the above, Defendant Schumacher's alleged false police report could not have impacted the jury's guilty verdict in light of the overwhelming evidence of his guilt and cumulative nature of his testimony with Detective Schott and Christian Lopez. *See U.S. ex rel. Coleman v. Shaw*, 2009 WL 1904370, at *12 (N.D. Ill. July 1, 2009), aff'd sub nom. *Coleman v. Hardy*, 690 F.3d 811 (7th Cir. 2012) (testimony that "did not touch on petitioner's volitional acts that supported the murder charge", even if false, had no effect on the jury's verdict); *Tayborn v. Scott*, 251 F.3d 1125, 1131 (7th Cir. 2001) (testimony, even if false, would not have impacted the jury's verdict because the testimony was cumulative of the prosecution's star witness).

Finally, to determine if Defendant Schumacher's police report had a material impact on Plaintiff's conviction, a useful analysis is to evaluate what was different between Plaintiff's first and second trial. One thing is certain, Defendant Schumacher's testimony related to his conversation with Zambrano on May 22, 2009 did not change at either trial, nor was his police report ever used for this purpose. SOF ¶¶ 50, 72. The witnesses remained virtually the same, except that Detective Schott did not testify. SOF ¶¶ 45-46, 71, 73. The exhibits were very similar except that Plaintiff's counsel used Plaintiff's Hufford Junior High Yearbook to attack the credibility of eye-witness Christian Lopez in the second trial but did not in the first. SOF ¶¶ 47, 75. But the most significant difference between the trials was the very reason why Plaintiff's first trial was overturned by the Illinois Appellate Court due to ineffective assistance of Zambrano's counsel. In the second trial, Zambrano's criminal defense attorney, introduced an accomplice liability jury instruction and impeached the People's star witness, Christian Lopez based on his immunity to

14

testify which Zambrano's counsel failed to do in the first trial. Because of this, the second jury found Plaintiff not guilty.

WHEREFORE, Defendants pray that this Honorable Court grant their Motion for Summary Judgment and enter judgment in their favor and against Plaintiff, Jesus Zambrano, and for any other relief this Court deems proper and just.

                                            Respectfully submitted,

                                            */s/ Andrew O'Donnell*

John O'Driscoll
Darcy Proctor
Andrew O'Donnell
TRESSLER LLP
550 E Boughton Rd #250
Bolingbrook, IL 60440
312-627-4000
jodriscoll@tresslerllp.com
dproctor@tresslerllp.com
aodonnell@tresslerllp.com
Attorney for City of Joliet

**CERTIFICATE OF SERVICE**

I hereby certify that on, I electronically filed the foregoing paper with the Clerk of the Court using the ECF System which will send notification to all counsel of record via the Court's CM/ECF system on October 11, 2023.

/s/Andrew O'Donnell___

Attorney for City of Joliet and Patrick Schumacher

**CERTIFICATE OF SERVICE**

I hereby certify that on, I electronically filed the foregoing paper with the Clerk of the Court using the ECF System which will send notification to all counsel of record via the Court's CM/ECF system on October 11, 2023.

/s/Andrew O'Donnell___

Attorney for City of Joliet and Patrick Schumacher