**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JESUS ZAMBRANO, | |
| Plaintiff, | |
| v. | Case No. 21-cv-4496 |
| CITY OF JOLIET and PATRICK SCHUMACHER | Honorable Steven Seeger |
| Defendants. | |

**DEFENDANTS' REPLY TO PLAINTIFF'S**
**LOCAL RULE 56(b)(3) STATEMENT OF ADDITIONAL FACTS**

Defendants, CITY OF JOLIET, a municipal corporation (hereafter the "City"), and PATRICK SCHUMACHER ("Defendant Schumacher") by and through its attorneys, Tressler LLP, and their reply to Plaintiff's Local Rule 56(b)(3) statement of additional facts, and pursuant to Fed. R. Civ. P. 56 state as follows:

**REPLY TO ADDITIONAL MATERIAL FACTS**

Plaintiff's response does not dispute certain numbered material facts listed in the Defendants' Motion. (Doc No. 87, Pltf. Resp. to MSJ, pp. 1-22) Therefore, those facts not specifically disputed should be deemed admitted. *See* Local Rule 56.1(a)(3).

Plaintiff's response does offer additional material facts as required by Local Rule 56.1(b)(3)(C). Defendants provide their response to Plaintiff's statement of additional material facts as follows:

1. Defendant Schumacher identified a document marked as Exhibit A in his deposition as the police report he generated during the investigation of the murder of Robert Gooch.

**RESPONSE:** Admit.

1

2.      Once a police report is generated, part of defendant Schumaker's job is to go to court and to testify.

**RESPONSE:** Defendants admit that part of Defendant Schumacher's job is to testify in court. Defendants deny that the act of creating a police reported necessitates Defendant Schumacher to testify in court.

3.      After a report is generated, it, the original copy is kept in the Records Department of the Joliet Police Department.

**RESPONSE:** Admit.

4.      A working copy of the report would have been kept with the lead detective in the case, in this instance, Shawn Filipiak. Defendant Schumacher had no reason to believe that Shawn Filipiak did not have a copy of Schumacher's report.

**RESPONSE:** Objection calls for speculation and lack of personal knowledge. Subject to and without waiving said objection, Defendants admit that Defendant Schumacher believed that Detective Filipiak had a copy of his police report but had no personal knowledge as to this fact.

5.      Defendant Schumacher could not recall whether he kept a copy of his report.

**RESPONSE:** Admit.

6.      Defendant Schumacher had no reason to believe that the States Attorney who put him on to testify did not have a copy of Schumacher's report.

**RESPONSE:** Objection, lacks foundation, mischaracterizes the testimony, and calls for speculation. Plaintiff's counsel incorrectly assumed that ASA Daniel Walsh directed Defendant Schumacher during Plaintiff's first criminal trial. In fact, ASA Trisha McKenna directed Defendant Schumacher at trial but Plaintiff's counsel never took her deposition to lay the appropriate foundation for this assertion of fact. Subject to and without waiving said objections,

2

Defendants admit that Defendant Schumacher believed that ASA Walsh had his police report but deny that his police report was used in any way during Plaintiff's first criminal trial.

7.      Defendant Schumacher admitted that generally it is his practice to meet or speak with a States Attorney before he testifies.

**RESPONSE:** Objection calls for speculation. Defendants admit Defendant Schumacher may speak with the Assistant State's Attorney prior to trial but deny that Plaintiff has any evidence of this fact. Plaintiff's counsel incorrectly assumed that ASA Daniel Walsh directed Defendant Schumacher during Plaintiff's first criminal trial. In fact, ASA Trisha McKenna directed Defendant Schumacher at trial but Plaintiff's counsel never took her deposition to lay the appropriate foundation for this assertion of fact.

8.      Defendant Schumacher could not "say for sure" whether or not he met with a States Attorney every time he testified at trial. He had testified at trial 50 to 100 times.

**RESPONSE:** Admit.

9.      Defendant Schumacher had no independent recollection of meeting with an Assistant States Attorney before he testified in the Robert Gooch murder case or whether the States Attorney he met with had a copy of his police report.

**RESPONSE:** Admit.

10.      According to Daniel M. Walsh, the lead prosecutor at Jesus Zambrano's first trial, it is part of his procedure to receive police procedures in the cases that he tries.

**RESPONSE:** Objection calls for speculation. Subject to and without waiving said objection, admit and immaterial. Plaintiff's counsel incorrectly assumed that ASA Daniel Walsh directed Defendant Schumacher during Plaintiff's first criminal trial. In fact, ASA Trisha

McKenna directed Defendant Schumacher at trial, but Plaintiff's counsel never took her deposition.

11.     A secretary in the States Attorney's Office would order police reports from the police department and then the file would be given to whoever was assigned to the case.

**RESPONSE:** Objection lacks foundation.

12.     To prepare police officers to testify, Walsh would typically meet with police officers at his office ahead of time or he would talk with them on the phone.

**RESPONSE:** Objection calls for speculation. Subject to and without waiving said objection, admit and immaterial. Plaintiff's counsel incorrectly assumed that ASA Daniel Walsh directed Defendant Schumacher during Plaintiff's first criminal trial. In fact, ASA Trisha McKenna directed Defendant Schumacher at trial, but Plaintiff's counsel never took her deposition to evaluate whether she met with Defendant Schumacher to prepare him for his trial testimony.

13.     Walsh could not recall any murder case in which he put a police officer on the stand without speaking with him first.

**RESPONSE:** Objection calls for speculation. Subject to and without waiving said objection, admit and immaterial. Plaintiff's counsel incorrectly assumed that ASA Daniel Walsh directed Defendant Schumacher during Plaintiff's first criminal trial. In fact, ASA Trisha McKenna directed Defendant Schumacher at trial, but Plaintiff's counsel never took her deposition to evaluate whether she met with Defendant Schumacher to prepare him for his trial testimony.

14.     Walsh conceded that it would be poor idea to put a police officer on the stand without speaking with him first.

**RESPONSE:** Admit and immaterial. Plaintiff's counsel incorrectly assumed that ASA Daniel Walsh directed Defendant Schumacher during Plaintiff's first criminal trial. In fact, ASA

Trisha McKenna directed Defendant Schumacher at trial, but Plaintiff's counsel never took her deposition to evaluate whether she met with Defendant Schumacher to prepare him for his trial testimony.

15.     Walsh generally replied upon the accuracy of police reports when putting officers on the stand to testify.

**RESPONSE:** Objection calls for speculation. Subject to and without waiving said objection, admit and immaterial. Plaintiff's counsel incorrectly assumed that ASA Daniel Walsh directed Defendant Schumacher during Plaintiff's first criminal trial. In fact, ASA Trisha McKenna directed Defendant Schumacher at trial, but Plaintiff's counsel never took her deposition to evaluate whether she met with Defendant Schumacher to prepare him for his trial testimony.

16.     Walsh was very familiar with defendant Patrick Schumacher.

**RESPONSE:** Admit.

17.     Patrick Schumacher was one of the witnesses who testified in Jesus Zambrano's first trial.

**RESPONSE:** Admit.

18.     Although Walsh had no specific memory of speaking with Schumacher before he testified, he had no reason to believe that he did not put Schumacher on the stand before Schumacher testified.

**RESPONSE:** Deny. ASA Walsh did not direct Detective Schumacher during Plaintiff's first criminal trial. Defendants admit that ASA Walsh has no specific memory of speaking with Defendant Schumacher.

19.     Walsh reviewed Patrick Schumacher's report in the Robert Gooch murder case and although he did not specifically remember reviewing the report before Schumacher testified he was virtually certain that he would have reviewed that report.

**RESPONSE:** Defendants admit that Walsh did not recall reviewing Schumacher's police report. Defendants deny the remaining allegations. Material to the extent that Schumacher's police report was not used during Zambrano's first criminal trial.

20.     Walsh was virtually certain that this was the report he would have reviewed before he put Patrick Schumacher on the stand.

**RESPONSE:** Objection calls for speculation and foundation. Subject to and without waiving said objections, deny. ASA Walsh did not direct Detective Schumacher during Plaintiff's first criminal trial. In fact, ASA Trisha McKenna directed Defendant Schumacher at trial, but Plaintiff's counsel never took her deposition to lay the appropriate foundation for this assertion of fact.

21.     To the best of Walsh's belief, the information that Patrick Schumacher put in his report and whatever Walsh told him before he testified is the information he used and was guided in in terms of presenting Schumacher's testimony.

**RESPONSE:** Objection calls for speculation and foundation. Subject to and without waiving said objections, deny. ASA Walsh did not direct Detective Schumacher during Plaintiff's first criminal trial. In fact, ASA Trisha McKenna directed Defendant Schumacher at trial, but Plaintiff's counsel never took her deposition to lay the appropriate foundation for this assertion of fact.

22.     On May 22, 2009, at about 3:00 p.m., Defendant Schumacher talked to Jesus Zambrano in the front driveway area of his house at 1025 north Raynor.

**RESPONSE:** Objection, lacks foundation as Plaintiff fails to identify a citation to support each asserted fact. Specifically, Plaintiff argues that "Ex. J., 102:19-24, 103:1-3" supports this asserted fact. First, Exhibit J is a copy of Dan Walsh's Deposition Transcript, but he has no personal knowledge of the conversation between Defendant Schumacher and Jesus Zambrano on May 22, 2009. Second, Dan Walsh's transcript consists of only 18 pages, and thus there is no 102 or 103 page as referred to in this asserted fact. Thus, the Court should disregard Paragraph 22. *See* Local Rule 56.1(d)(1) & (2).

23.     The interaction between Schumacher and Jesus Zambrano consisted of the exchange of a couple of sentences.

**RESPONSE:** Objection, lacks foundation as Plaintiff fails to identify a citation to support each asserted fact. Specifically, Plaintiff argues that "Ex. J., 102:5-7" supports this asserted fact. First, Exhibit J is a copy of Dan Walsh's Deposition Transcript, but he has no personal knowledge of the conversation between Defendant Schumacher and Jesus Zambrano on May 22, 2009. Second, Dan Walsh's transcript consists of only 18 pages, and thus there is no 102 page as referred to in this asserted fact. Thus, the Court should disregard Paragraph 23. *See* Local Rule 56.1(d)(1) & (2).

24.     The interaction was more of an interrogation than a conversation.

**RESPONSE:** Objection, lacks foundation as Plaintiff fails to identify a citation to support each asserted fact. Specifically, Plaintiff argues that "Ex. J., 102:5-7" supports this asserted fact. First, Exhibit J is a copy of Dan Walsh's Deposition Transcript, but he has no personal knowledge of the conversation between Defendant Schumacher and Jesus Zambrano on May 22, 2009. Second, Dan Walsh's transcript consists of only 18 pages, and thus there is no 102 page as referred

to in this asserted fact. Thus, the Court should disregard Paragraph 24. *See* Local Rule 56.1(d)(1) & (2).

25.     Patrick Schumacher's statements in his police report that he asked Jesus Zambrano to get into the back seat of Sergeant Reed's unmarked squad car and told Jesus Zambrano that he was not under arrest was false. It was also false that Jesus Zambrano agreed to speak with Patrick Schumacher. In fact Schumacher asked Sergeant Reed what to do with Zambrano and Sergeant Reed told Schumacher to put Zambrano in the backseat. Schumacher said to Zambrano to "jump in" and Zambrano jumped in. Schumacher did not tell Zambrano that he was not under arrest and Zambrano did not agree to speak with Schumacher.

**RESPONSE:** Objection, lacks foundation as Plaintiff fails to identify a citation to support each asserted fact. Specifically, Plaintiff argues that "Ex. J., 103:6-23, 104:1-24, 105:1-10" supports this asserted fact. First, Exhibit J is a copy of Dan Walsh's Deposition Transcript, but he has no personal knowledge of the conversation between Defendant Schumacher and Jesus Zambrano or Defendant Schumacher and Sgt. Reid on May 22, 2009. Second, Dan Walsh's transcript consists of only 18 pages, and thus there is no 103, 104 or 105 page as referred to in this asserted fact. Thus, the Court should disregard Paragraph 25. *See* Local Rule 56.1(d)(1) & (2).

26.     Patrick Schumacher's statement in his police report that Jesus Zambrano told Schumacher that he was with Pedro Sanchez and Michael Ortiz the night before May 22, 2009 was false. In fact, Zambrano said only that he was at a female's house and had gone home.

**RESPONSE:** Objection, lacks foundation as Plaintiff fails to identify a citation to support each asserted fact. Specifically, Plaintiff argues that "Ex. J., 106:24, 107:1-24, 115-14-24, 116:1-24, 117:1-6" supports this asserted fact. First, Exhibit J is a copy of Dan Walsh's Deposition Transcript, but he has no personal knowledge of the conversation between Defendant Schumacher

and Jesus Zambrano on May 22, 2009. Second, Dan Walsh's transcript consists of only 18 pages, and thus there is no 106, 107, 115, 116, or 117 page as referred to in this asserted fact. Thus, the Court should disregard Paragraph 26. *See* Local Rule 56.1(d)(1) & (2). Moreover, Plaintiff testified that he told Defendant Schumacher on May 22, 2009, "[i] told him I was with my girl and a couple friends the night before, and that was it." **Ex. A**, 113: 8-9.

27.     Patrick Schumacher's statement in his police report that Jesus Zambrano told Schumacher that the night before Jesus Zambrano went to Claudio Sanches's house in the area of Ruby Street near the west side of the Des Plaines river was false. Jesus Zambrano never gave Schumacher that information.

**RESPONSE:** Objection, lacks foundation as Plaintiff fails to identify a citation to support each asserted fact. Specifically, Plaintiff argues that "Ex. J, 108:19-24, 109:1-24, 110:1-24, 11:1-19" supports this asserted fact. First, Exhibit J is a copy of Dan Walsh's Deposition Transcript, but he has no personal knowledge of the conversation between Defendant Schumacher and Jesus Zambrano on May 22, 2009. Second, Dan Walsh's transcript consists of only 18 pages, and thus there is no 108, 109, or 110 or page as referred to in this asserted fact. Additionally, Ex. J, pg. 11: 1-19, outlines what documents ASA Walsh reviewed in preparation of his deposition and has nothing to do with this asserted fact. Thus, the Court should disregard Paragraph 27. *See* Local Rule 56.1(d)(1) & (2). Moreover, Plaintiff testified that he told Defendant Schumacher on May 22, 2009, "[i] told him I was with my girl and a couple friends the night before, and that was it." **Ex. A**, 113: 8-9.

28.     On May 22, Patrick Schumacher asked Jesus Zambrano where he was the might (sic) before.

**RESPONSE:** Objection, lacks foundation as Plaintiff fails to identify a citation to support each asserted fact. Specifically, Plaintiff argues that "Ex. J., 106:15-23" supports this asserted fact. First, Exhibit J is a copy of Dan Walsh's Deposition Transcript, but he has has no personal knowledge of the conversation between Defendant Schumacher and Jesus Zambrano on May 22, 2009. Second, Dan Walsh's transcript consists of only 18 pages, and thus there is no 106 page as referred to in this asserted fact. Thus, the Court should disregard Paragraph 28. *See* Local Rule 56.1(d)(1) & (2).

29. Patrick Schumacher was called as a witness by the defense in Jesus Zambrano's second trial. He testified that although he initially had testified on cross-examination that Michael Ortiz was not arrested as part of his investigation, he had reviewed his police report over the weekend, his recollection had been refreshed, and he now remembered that Michael Ortiz had been arrested.

**RESPONSE:** Objection, relevance. Subject to and without waiving said objection, admit. Immaterial as Defendant Schumacher's review of his police report over the weekend during Zambrano's second criminal trial is not relevant to Plaintiff's fabrication of evidence claim because the portion in which he reviewed – whether he arrested Michael Ortiz – is not at issue in this Lawsuit.

30. In her opening closing argument in Jesus Zambrano's first trial, prosecutor McKenna referred to Patrick Schumacher's testimony as follows:

"That afternoon, the day of May 22, 2009, Detective Schumacher goes to talk to the defendant. When he gets there, the defendant is still with Pedro Sanchez; but Detective Schumacher gets him away and talks to him alone. And the defendants doesn't say that Pedro Sanchez did anything or anything along those lines.

Mr. Bretz: Objection, Judge.

The Court: I will sustain the objection.

Mr. Bretz: I ask the jury to disregard.

Ms. McKenna: The defendant said that he was with Pedro the night before."

**RESPONSE:** Objection, Plaintiff fails to identify a citation to support each asserted fact. Specifically, Plaintiff argues that "Ex. K, pg. 914" supports this asserted fact. However, Ex. K, pg. 914 is Plaintiff's counsel Bretz's closing statement and makes no mention of the above assertion of facts. Thus, the Court should disregard Paragraph 30. *See* Local Rule 56.1(d)(1) & (2). Subject to and without waiving said objection, admit and immaterial as the Judged sustained the objections and instructed the jury to disregard.

31.     In his closing argument, in Jesus Zambrano's first trial, defense counsel Bretz referred to Jesus Zambrano's conversation with Patrick Schumacher as follows:

In attorney Bretz's closing argument he referred to Patrick Schumacher's conversation with Jesus Zambrano on May 22 as follows:

"The third distinction between Jesus and Lopez is we know how Lopez lied and tried to direct attention away from himself. As to Jesus, there was no evidence presented other than he was questioned about the evening of May 21, and I specifically asked the detective if he talked to him about being at Lois Place during the early morning hours of May 22, 2009, and he said, no, which leads us to the fourth and final distinction between then."

**RESPONSE:** Objection, Plaintiff fails to identify a citation to support each asserted fact. Specifically, Plaintiff argues that "Ex. K, pg. 939" supports this asserted fact. However, Ex. K, pg. 939 is Plaintiff's counsel Bretz's closing statement regarding Christian Lopez's testimony at the time he arrived at Larkin Apartments. Thus, the Court should disregard Paragraph 31. *See* Local

Rule 56.1(d)(1) & (2). Subject to and without waiving said objection, admit and material. Material to the extent that Plaintiff's own counsel used Patrick Schumacher's testimony in defense of Plaintiff to support a not guilty verdict.

32.     In his rebuttal closing argument in Jesus Zambrano's first trial, prosecutor Walsh referred to Patrick Schumacher's testimony as follows:

Mr. Bretz talks a lot about Christian Lopez and his credibility as a witness. Well, think about this. The next day Jesus Zambrano talked to the police and doesn't tell them about the previous night.

Mr. Bretz: Objection, your Honor.

The Court: Sustain the objection.

Mr. Walsh: Jesus Zambrano talks to the police, mentions that he was with his friends and nothing else."

**RESPONSE:** Objection, Plaintiff fails to identify a citation to support  each asserted fact. Specifically, Plaintiff argues that "Ex. K, pg. 971" supports this asserted fact. However, Ex. K, pg. 971 is Bretz, ASA McKenna and the Court arguing about a juror question. Thus, the Court should disregard Paragraph 32. *See* Local Rule 56.1(d)(1) & (2). Subject to and without waiving said objection, admit and immaterial as the Judged sustained the objection.

33.     During Jesus Zambrano's first trial, his mother, Norma Zambrano testified that on May 27, 2009 police came to her home and informed her that there was a murder warrant out for Jesus Zambrano. After she heard about the warrant, she left Joliet with her son, Jesus Zambrano. It was her idea to leave, and she did not give her son any choice in the matter. She told him to cut his hair and say that his name was Juan. She physically put him int the car. She did not testify that she told Jesus Zambrano about the warrant.

**RESPONSE:** Objection, Plaintiff fails to identify a citation to support each asserted fact. Specifically, Plaintiff argues that "Ex. K, pg. 807-08, 812," supports this asserted fact. However, Ex. K, pg. 807-08, 812 is Bretz direct examination of Dennis Lauhglin – Property Manager at Larkin Apartments and Officer Darrel Gavin. Thus, the Court should disregard Paragraph 33 *See* Local Rule 56.1(d)(1) & (2). Subject to and without waiving said objection, admit. Material to the extent that Norma Zambrano testified consistently between Plaintiff's first and second trial as asserted. In fact, the only change in her testimony was that during the second trial, she testified that Plaintiff and Christian Lopez were close friends, that he would frequent her home often and introduced the only difference in Exhibits between the two trials – Hufford Junior High School Yearbook. Compare Ex. E, pg. 388-397 (Norma's 1st Trial Testimony) to Ex. F, pg. 409 – 440.

34.    During Jesus Zambrano's first trial, Christian Lopez was extensively cross-examined and impeached with his prior lies to the police, his prior inconsistent statements, his poor memory for events, his consumption of marijuana and alcohol, his prior felony convictions, and his pending cases, and his favorable treatment by the prosecution.

**RESPONSE:** Defendants admit that Christian Lopez was cross-examined. Defendants deny that Zambrano's counsel impeached Lopez as to his favorable treatment by the prosecution and his counsel failed to impeach Lopez with evidence that he received immunity to testify and failed to tender a jury instruction for accomplice liability. People v. Zambrano, 2016 IL App (3d) 140178, ¶ 1.

35.    During Jesus Zambrano's first trial Elissa Hinton testified that she heard Pedro Sanchez's voice just before Robert Gooch was shot. Sanchez was a former boyfriend, had argued with Robert Gooch and had a motive to murder Robert Gooch, her current boyfriend. She did not

know Jesus Zambrano and had no knowledge of any animosity between Jesus Zambrano and

Robert Gooch.

      **RESPONSE:** Admit.


Dated: October 11, 2023


                  Respectfully submitted,

                  */s/ Andrew O'Donnell*

John O'Driscoll
Darcy Proctor
Andrew O'Donnell
TRESSLER LLP
550 E Boughton Rd #250
Bolingbrook, IL 60440
312-627-4000
jodriscoll@tresslerllp.com
dproctor@tresslerllp.com
aodonnell@tresslerllp.com

Attorney for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on, I electronically filed the foregoing paper with the Clerk of the Court using the ECF System which will send notification to all counsel of record via the Court's CM/ECF system on October 11, 2023

/s/ *Andrew O'Donnell*___

Attorney for Defendants